UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JERRY RAMRATTAN,

                                Plaintiff,

   v.                                                  9:22-CV-0025 (GTS/ATB)

THE STATE OF NEW YORK, et al.,

                                Defendants.

---

APPEARANCES:

JERRY RAMRATTAN
Plaintiff, pro se
12-A-0608
Eastern NY Correctional Facility
Box 338
Napanoch, NY 12458

GLENN T. SUDDABY
United States District Judge

## DECISION AND ORDER

### I.    INTRODUCTION

In December 2021, plaintiff Jerry Ramrattan ("plaintiff") filed a pro se complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and Section 504 of the Rehabilitation Act ("RA") asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 2 ("Compl."). Plaintiff, who was confined at Eastern Correctional Facility ("Eastern C.F.") at the time he filed the action, did not pay the statutory filing fee and sought leave to proceed in forma pauperis ("IFP").

1

Dkt. No. 13 ("IFP Application").  In a Decision and Order filed on May 2, 2022 (the "May Order"), the Court held plaintiff's IFP application in abeyance pursuant to the "three strikes" rule set forth in 28 U.S.C. § 1915(g) ("Section 1915(g)").  Dkt. No. 17.  In light of his pro se status, plaintiff was afforded thirty (30) days in which to either (i) file an amended complaint demonstrating that the "imminent danger" exception in Section 1915(g) was applicable, or (ii) pay the Court's filing fee of four hundred and two dollars ($402.00) in full.  *Id.*

On July 1, 2022, plaintiff filed a second IFP Application and an amended complaint. Dkt. No. 21 ("Sec. IFP Application"); Dkt. No. 22 ("Am. Compl.").  In a Decision and Order filed on July 13, 2022, the Court denied plaintiff's second IFP application pursuant to Section 1915(g) because the amended complaint lacked any allegations which plausibly suggested that plaintiff was at risk of suffering a serious physical injury when he commenced this action. Dkt. No. 23.  Because plaintiff had already been afforded an opportunity to amend his complaint, he was advised that if he wished to proceed with the action he must, within thirty (30) days, pay the statutory filing fee of four hundred and two dollars ($402.00) in full.  *Id*.

On August 1, 2022, plaintiff paid the statutory filing fee.  Presently before the Court for review are the amended complaint (Dkt. No. 22), plaintiff's motion for counsel (Dkt. No. 11), and plaintiff's motion for a preliminary injunction (Dkt. No. 20).

**II.    SUFFICIENCY OF THE AMENDED COMPLAINT**

    **A.  Standard of Review**

Under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any

2

portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "[W]here

3

the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While pro se parties are held to less stringent pleading standards, the Second Circuit has held that "district courts may dismiss a frivolous complaint sua sponte even when the plaintiff has paid the required filing fee." *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000).  Indeed, "district courts are especially likely to be exposed to frivolous actions and, thus, have [a] need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources." *Id*. at 364.  A cause of action is properly deemed frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The Court will construe the allegations in the amended complaint with the utmost leniency.  *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

### B. Summary of the Amended Complaint[1]

The following facts are set forth as alleged by plaintiff in his amended complaint.

Plaintiff, a legally blind inmate, requested and received reasonable accommodations

---

[1] The amended complaint includes exhibits.  *See* Dkt. No. 22-1 through 22-5.  To the extent that the exhibits are relevant to the incidents described in the amended complaint, the Court will consider the amended complaint as well as any documents attached as exhibits.  *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

4

for his visual/hearing impairments.  Am. Compl. at 2.  In September 2019, plaintiff was transferred to Eastern C.F. and assigned to the Sensorial Disability Unit ("SDU").  *Id*. at 2.  Shortly after arriving at Eastern C.F., plaintiff encountered difficulties accessing his accommodations; specifically with defendant Interpreter Heidi Lewis ("Lewis").  *Id.* at 4.  As a result, plaintiff "notified" outside agencies.  *Id.*

On January 16, 2020, plaintiff was interviewed by a representative affiliated with "Disability Rights New York" and advocates from Legal Aid Society.  Am. Compl. at 5.  The same day, administrators "notified" defendant Dr. Mikhail Gusman ("Gusman").[2]  *Id*.  Gusman began "probing into plaintiff's medical files [. . .] to find a way to remove him from SDU and strip[] him" of his reasonable accommodations.  *Id*.  On January 16, 2020, Gusman and defendant Deputy Superintendent of Programs Cheryl Morris ("Morris") directed Lewis to confiscate plaintiff's accommodations and to transfer plaintiff to general population.  *Id*.; Dkt. No. 22-1 at 9-12.  Lewis confiscated plaintiff's cane, talking watch, lamp, lighted magnifying glass, head phones, talking calculator, digital book player, sunglasses, and hat.  Am. Compl. at 5-6.  Additionally, the following services were discontinued: access to the SDU computer in the law library and recreational basement; access to the resource room for the visually/hearing impaired, and a mobility sight guide.  *Id*. at 6.  On January 17, 2020, plaintiff was transferred to general population.  Am. Compl. at 3-4.

In June 2020, plaintiff renewed his request for reasonable accommodations.  Dkt. No. 22-3 at 111, 114.  Gusman executed the "medical verification" indicating that plaintiff, "refused optometry consult."  *Id*.  Plaintiff's request was denied.  *Id*.

---

[2]  The amended complaint lacks facts related to the sum and substance of the alleged "notification."

5

In February 2021, plaintiff filed another request for reasonable accommodations. Dkt. No. 22-3 at 102. Gusman noted "no medical verification" on file and plaintiff's request was denied. *Id.*

In September 2021, plaintiff submitted a third request for accommodations. Dkt. No. 22-2 at 17-18. Lewis' signature appears on the request. *Id.* Gusman denied plaintiff's request noting, "non-significant hearing loss" and "no medical verification on file." *Id.*

Construed liberally,[3] plaintiff asserts the following: (1) First Amendment retaliation claims against Gusman and Morris; (2) Eighth Amendment deliberate medical indifference claims; (3) ADA claims; and (4) state law claims. *See generally* Am. Compl. Plaintiff seeks monetary damages and for an order directing defendants to restore all reasonable accommodations. *Id.* at 15. For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the amended complaint.

## III. ANALYSIS

### A. Eleventh Amendment

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

---

[3] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in Plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

Accordingly, plaintiff's claims against the State of New York is dismissed as plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see also Dicks v. Binding Together, Inc*., No. 03 CIV 7411, 2007 WL 1462217, at *5 (S.D.N.Y. May 18, 2007) (dismissing the plaintiff's claims for prospective injunctive relief against the State of New York as barred by the Eleventh Amendment) *aff'd in part sub nom. Dicks v. Chow*, 382 Fed. App'x 28 (2d Cir. 2010); *see also deBroize v. New York State*, No. 99-CV-0904 (NAM), 2001 WL 1217192, at *3 (N.D.N.Y. Sept. 21, 2001) (dismissing ADA claims against State of New York). Similarly, plaintiff's claims for monetary damages pursuant to section 1983 against defendants in their official capacities are barred by the Eleventh Amendment and are dismissed with prejudice pursuant. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against

7

state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.").

## B. First Amendment - Retaliation

Plaintiff asserts that Gusman and Morris retaliated against plaintiff for complaints to "outside agencies" and confiscated plaintiff's reasonable accommodations.

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a

constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

The Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.' " *Gill*, 389 F.3d at 381 (citation omitted) (omission in original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.; see also Ford v. Palmer,* 539 Fed. App'x 5, 7 (2d Cir. 2013) ("The Court must apply the "objective test [for First Amendment retaliation] [. . .] even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits.")*.* Conduct that is de minimis does not give rise to actionable retaliation. *Dawes*, 239 F.3d at 493. What is de minimis varies according to context. *Id.* "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.* at 491 (*quoting Thaddeus-X v. Blatter,* 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc) (per curiam)). If a retaliatory act against an inmate would not be likely to "chill a person of ordinary firmness from continuing to engage" in a protected activity, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Id.* at 493.

A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a

causal relationship," *Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001), "the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months." *Ashok v. Barnhart*, 289 F.Supp.2d 305, 314 (E.D.N.Y. 2003).

Upon review and with due regard for plaintiff's status as a pro se litigant, the Court finds that plaintiff's First Amendment retaliation claims against Gusman and Morris survive initial review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### C. Eighth Amendment - Deliberate Medical Indifference

Plaintiff alleges that Gusman was deliberately indifferent to his serious medical needs. Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. at 102, 104 (1976). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Second, the

defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' ").

Even assuming that plaintiff suffered from serious medical needs, plaintiff does not set forth facts to plausibly suggest that defendant denied him medical care for those needs. Plaintiff does not allege that he requested, and was denied, medical care from Gusman. There is nothing in the amended complaint to suggest that defendant knew of and disregarded an excessive risk to plaintiff's health. Plaintiff's allegations, even when generously construed, fail to state any deliberate indifference claim against defendant.

Accordingly, plaintiff's Eighth Amendment medical indifference claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted.

### D.  ADA and RA

Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 of the RA, "protects a 'qualified individual with a disability' from exclusion of participation, denial of the benefits, or subjection to discrimination 'under any program or activity receiving Federal financial

assistance,' because of the individual's disability." *Harrington v. Vadlamudi*, No. 9:13-CV-0795( LEK/RFT), 2014 WL 4829483, at *3 (N.D.N.Y. Sept. 29, 2014) (citing 29 U.S.C. § 749(a)).  The ADA and RA are applicable to inmates in state correctional facilities. *See Pennsylvania Dep't of Corr. v. Yeskey,* 524 U.S. 206, 213 (1998).  To successfully plead a Title II or RA claim, a plaintiff must establish three elements: (1) the plaintiff is a qualified individual with a disability, (2) the defendant is subject to the ADA or Rehabilitation Act, and (3) based on the plaintiff's disability, the plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003); *Allah v. Goord*, 405 F.Supp.2d 265, 274 (S.D.N.Y. 2005).

Generally, under the ADA and RA, a state official may not be sued in their individual capacity. *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as *Garcia* is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials.").

In the Second Circuit, it is unsettled whether an individual defendant can be sued in their official capacity to defend against ADA or Rehabilitation Act claims. *See Monroe v. Gerbing*, 16-CV-2818, 2017 WL 6614625, at *15 (S.D.N.Y. Dec. 27, 2017) (collecting cases illustrating the inconsistent holdings as to whether individuals, in their official capacity, can be sued under the ADA or RA).  On one hand, generally, some district courts within the Second Circuit have held that the ADA and RA do not provide for liability against defendants in their official capacities. *Id*.  In limited instances, the Second Circuit has allowed "an ADA claim for

12

damages against a state (or state agency or official)" to proceed but only "if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." *Id.*; *Garcia*, 280 F.3d at 112. On the other hand, some district courts within the Second Circuit have allowed for a defendant to be sued in their official capacity under the ADA and Rehabilitation Act for injunctive relief, but not for damages. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (permitting a claim against individual defendants to be asserted only if the plaintiff was seeking injunctive relief). Under the ADA, an individual can be sued for injunctive relief in their official capacity because the individual is effectively a "public entity" where "the government is the real party in interest in an official capacity suit." *Henrietta D.*, 331 F.3d at 288.

Upon review and with due regard for plaintiff's status as a pro se litigant, the Court finds that plaintiff's ADA and RA claims survive initial review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### E. State Law Claims

District courts have supplemental jurisdiction over all state law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. 28 U.S.C. § 1367(a) (2000).

#### 1. Negligence

"Under New York law . . . a plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach

of this duty; and (3) injury to the plaintiff as a result thereof." *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 177 (2d Cir. 2013) (quoting *Alfaro v. Wal–Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000)).

Because plaintiff's negligence claim arises out of the same facts upon which his federal claims are based, the Court will exercise supplemental jurisdiction over this claim.

### 2. Intentional Infliction of Emotional Distress

The statute of limitations for intentional torts such as intentional infliction of emotional distress is one year in New York.  N.Y.C.P.L.R. § 215(3).  Plaintiff's intentional infliction of emotional distress claims are based on the same conduct that gives rise to his federal claims.  Because plaintiff filed his complaint on October 28, 2021, plaintiff's state law claim for intentional infliction of emotional distress is untimely filed and therefore dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[4]

## IV. MOTION FOR COUNSEL

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997).  Instead, a number of factors must be considered by the Court when ruling on such a motion. *Hendricks*, 114 F.3d at 392.  As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. *Id*. (citing *Hodge v.*

---

[4] Following the mailbox rule and applying the presumption that plaintiff delivered the complaint to a prison official on the date it was signed. *See Houston v. Lack*, 487 U.S. 266, 271 (1988) (a pro se litigant's papers are deemed to have been filed when they are placed in the hands of a prison official for mailing); *Johnson v. Coombe*, 156 F.Supp.2d 273, 277 (S.D.N.Y. 2001) (where it is unclear when the complaint was given to prison officials, absent evidence to the contrary, the court assumes the complaint was given to prison officials the date it was signed).

*Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)). If so, the following should then be considered:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61-62; *accord, Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994). None of the foregoing factors are controlling in a particular case, and each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F.Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, J.) (citing *Hodge*, 802 F.2d at 61).

This action is in its earliest stages. Indeed, this Decision and Order accepts for filing the amended complaint pursuant to Section 1915A – a threshold ruling that expresses no opinion whatsoever on the likely substance of the limited claims that survive initial review. Moreover, defendants have not yet been served or answered. On that basis alone plaintiff's motion is denied.

## V.     MOTION FOR PRELIMINARY INJUNCTION

Plaintiff seeks an order directing defendants to allow him access to the SDU computer. *See* Dkt. No. 20.

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit.

15

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010). To prevail on a motion for preliminary injunctive relief, a plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *Id*. at 35; *Cacchillo v. Insmed, Inc*., 638 F.3d 401, 405-06 (2d Cir. 2011). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *Id*.; *see also Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996). Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Mkts*., 598 F.3d at 35 n.4 (internal quotation marks omitted). The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at * 2 (E.D.N.Y. July 31, 2008). The district court has wide discretion in determining whether to grant a preliminary injunction. *Moore*, 409 F.3d at 511.

Construing plaintiff's motion in the light most favorable to him as a pro se plaintiff, the Court finds that he has failed to substantiate any allegations of irreparable harm with evidence in admissible form or to demonstrate, with evidence, a likelihood of success on the merits of his underlying claims, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *See Hancock v. Essential Res., Inc.,* No.

16

91-Civ-0213, 792 F.Supp. 924, 928 (S.D.N.Y. Apr. 28, 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals.").  Additionally, since defendants have not yet answered, and, indeed, have not even been served, the Court cannot ascertain plaintiff's likelihood of success, or whether he has otherwise met the standard for issuance of preliminary injunctive relief.

For the foregoing reasons, plaintiff's motion for preliminary injunctive relief is denied in its entirety.

## VI.  SERVICE OF PROCESS

In this case, plaintiff paid the entire filing fee for this action.  As a result, plaintiff is responsible for serving the summonses and amended complaint on the defendants.  Rule 4 of the Federal Rules of Civil Procedure provides that "[a]t the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court."  Fed. R. Civ. P. 4(c)(3).  In order to advance the disposition of this action, and in light of the fact that plaintiff is proceeding pro se, to effectuate service by the United States Marshal, plaintiff must (1) pay the service fee due to the U.S. Marshal in full in advance;[5] and (2) provide all necessary papers for service, including a completed U.S. Marshals Form and summons form (both of which may be obtained from the Office of the Clerk of the Court) for the defendants, and a copy of the complaint for the defendants.  Plaintiff is directed to send the service documents and payment of the service fee to the Clerk of the United States District Court, Northern District of

---

[5] Payment of the service fee must be made by money order or certified check payable to "U.S. Marshal."  For service by mail, the fee is $8.00 per summons and complaint.  The cost of service by mail on the remaining defendants is $24.00.  Plaintiff is advised that if initial service is unsuccessful, he will be required to pay the U.S. Marshal any additional fees, also in advance, for subsequent service attempts according to the fee schedule set by the U.S. Marshal.

New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367, to be forwarded by the Clerk to the U.S. Marshal.

## VII.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted: (1) claims against the State of New York; and (2) claims for monetary damages pursuant to section 1983 against defendants in their official capacities; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted: (1) Eighth Amendment deliberate medical indifference claims; and (2) state law claim for intentional infliction of emotional distress;[6] and it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915A and requires a response: (1) First Amendment retaliation claims; (2) ADA and RA claims; and (3) negligence claims; and it is further

**ORDERED** that the State of New York is **DISMISSED** as a defendant herein; and it is further

**ORDERED** that plaintiff is afforded an opportunity to request an order of this Court directing service by the U.S. Marshal and provide payment of the service fee to the U.S. Marshal in full by money order or certified check; and it is further

---

[6] If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that upon plaintiff's request for assistance with service of process, the Clerk shall return the file to the Court for further review; and it is further

**ORDERED** that if plaintiff does not request for assistance with service of process **within twenty (20) days** of the filing date of this Decision and Order, the Clerk shall issue a summonses and forward them to plaintiff, who shall be responsible for effecting service of process on defendants.  Upon issuance of the summonses, the Clerk shall send a copy of the summonses and amended complaint to the Office of the New York Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that defendants or their counsel, file a response to the amended complaint as provided for in the Federal Rules of Civil Procedure after service of process upon them; and it is further

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel.  Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.**  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any**

**change in his address; their failure to do so will result in the dismissal of his action**;

and it is further

      **ORDERED** that plaintiff's motion for counsel (Dkt. No. 11) is **DENIED** and it is further

      **ORDERED** that plaintiff's motion for preliminary injunctive relief (Dkt. No. 20) is **DENIED** and it is further

      **ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: September 13, 2022
       Syracuse, New York

*[Signature]*
Glenn T. Suddaby
U.S. District Judge