# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

JERRY RAMRATTAN,

                               Plaintiff,

      v.                                            9:22-CV-025
                                                  (GTS/ATB)

GUZMAN, MS. LEWIS and MS. MORRIS,

                               Defendants.

---

JERRY RAMRATTAN, Plaintiff, pro se
AIMEE COWAN, Asst. Att'y General, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

      Presently before the court is a motion to dismiss the amended complaint ("AC") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  (Dkt. No. 43).  Plaintiff responded in opposition to the motion, defendants filed a reply, and the court accepted what it interpreted to be a surreply from plaintiff for consideration with the pending motion.  (Dkt. Nos. 49, 52, 55).  This motion has been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, United States District Judge. For the following reasons, this court recommends granting defendants' motion in part, and denying defendants' motion in part.

1

## I.    Motion to Dismiss

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Bell Atl. Corp.*, 550 U.S. at 555). When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co*., 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (per curiam).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court's consideration is limited to the factual allegations as stated in the complaint, documents attached to the complaint as exhibits or incorporated into the complaint by reference, and matters of which the court can take judicial notice.  *Portillo v. Webb*, No. 16 Civ. 4731, 2017 WL 4570374, at *1 (S.D.N.Y. Oct. 11, 2017) (quoting *Brass v. Am. Film Tech.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*,

2

949 F.2d 42, 47-48 (2d Cir. 1991)).  A court may take judicial notice of a public record

pursuant to Fed. R. Evid. 201(b).  *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

Defendants have also moved to dismiss based on a lack of jurisdiction pursuant

to Fed. R. Civ. P. 12(b)(1). The Rule 12(b)(1) motion is applicable only to the

defendants' argument that this court lacks subject matter jurisdiction over plaintiff's

state law negligence claims pursuant to the Eleventh Amendment and N.Y. Corr. Law §

24.2. (*See infra.* at 15-16). The analysis applicable to a motion to dismiss for lack of

subject matter jurisdiction is slightly different than that applicable to Rule 12(b)(6). In a

motion to dismiss for lack of subject matter jurisdiction, the court is not bound by the

face of the pleadings and may resolve disputed factual issues by reference to evidence

outside the pleadings. *JTE Enterprises, Inc. v. Cuomo*, 2 F. Supp. 3d 333, 338-39

(E.D.N.Y. 2014).

## II.  **Factual Contentions**

Pursuant to Judge Suddaby's initial review of the amended complaint under 28

U.S.C. § 1915A, the following of plaintiff's claims remain:

1)   First Amendment retaliation claims against
     defendants Morris and Guzman;

2)   claims pursuant to the Americans with Disabilities
     Act and Rehabilitation Act against defendants
     Morris, Guzman, and Lewis; and

> 3) negligence claims against defendants Morris,
> Guzman, and Lewis.

(Dkt. No. 26 at 18).  The court will summarize plaintiff's allegations as stated in the amended complaint, and the exhibits attached thereto, to the extent they are relevant to plaintiff's surviving claims.

Plaintiff, who identifies as "legally blind," was an incarcerated individual in the custody of the New York State Department of Corrections and Community Supervision at all times relevant to the underlying allegations.  In September 2019, plaintiff was transferred from Five Points Correctional Facility to Eastern Correctional Facility ("Eastern C.F.").  (AC at 4).  Plaintiff alleges that upon arriving to Eastern C.F., he was "immediately placed within the medical unit due serious pre-[existing] injuries (Legally Blind) and (Hearing Impaired)[.]"  (*Id.*).  Plaintiff also states that at the time of his transfer he had access to a "blind-cane," "sunglasses," and "[reasonable accommodation] programs/services," which were issued to him at a prior correctional facility based upon "prior medical evaluations, confirming serious pre-existing[] injuries."  (*Id.*).  Shortly after plaintiff arrived AT Eastern C.F., he was placed in the Sensorial Disability Unit ("SDU"); housing for the visually and hearing impaired.  (*Id.*).

After "several months" at Eastern C.F., plaintiff "began experiencing difficulties in receiving adequate [reasonable accommodations] . . . such as devices, assistance

from qualified interpreter [defendant Ms. Lewis,]" and other "necessary mandated

entitlement[s]" through the SDU housing program, which he alleges was supervised by

defendant Deputy Superintendent of Programs, Ms. Morris.  (*Id.*).  Plaintiff alleges that

he notified various advocacy agencies of these deficiencies, including Disability Rights

of New York ("DRNY") and the Legal Aid Society ("LAS"), which agencies in turn

requested that various incarcerated individuals housed in the SDU complete

questionnaires regarding conditions within the unit.  (*Id.*).

On or about January 16, 2021, advocates from both DRNY and LAS visited

Eastern C.F. and conducted "one-on-one interviews" with various incarcerated

individuals within the SDU, including plaintiff.  (*Id.* at 5).  Plaintiff alleges that

"approximately that same day[,]" after the advocates conducted their interviews,

unidentified officials at Eastern C.F. notified defendant "head physician" Mikhail

Guzman, who "began to strategically prob[e] into plaintiff's medical files . . . to find a

way to remove [plaintiff] from [SDU] housing and strip[] him of all [reasonable

accommodations] so [plaintiff would] no longer cause any further problems."  (*Id.*).

Plaintiff was instructed to "immediately report" to the SDU resource room, where

he was instructed by Ms. Lewis to "immediately turn over all [reasonable

accommodation] devices[.]"  (*Id.*).  Plaintiff complied. (*Id.*).  Plaintiff was then

instructed to sign a "waiver in forfeiture" of his reasonable accommodations.  (*Id.*).

Plaintiff "questioned" Ms. Lewis's actions, who responded "sarcastically" that she had

been "ordered by [Ms. Morris and Dr. Guzman] to confiscate all [plaintiff's reasonable

accommodation] devices, before he is transferred to general population housing unit."

(*Id.*).  Plaintiff alleges that, in addition to the confiscation of the devices, his access to

various services was discontinued, including the SDU computer, resource room,

mobility sight-guide, "free matter for the blind postage," and the "recreational

basement."  (*Id.* at 5-6).  Plaintiff was transferred to general population on or about

January 17, 2021.  (*Id.* at 6).

In June 2020, plaintiff renewed his request for reasonable accommodations. (Dkt.

No. 22-3 at 111, 114).  In response, Dr. Guzman apparently executed a medical

verification indicating that plaintiff refused an optometry consultation, and plaintiff's

request was denied.  (*Id.*).  Plaintiff filed another request for reasonable

accommodations in February 2021, which Dr. Guzman denied due to "no medical

verification."  (Dkt. No. 22-3 at 102).  In September 2021, plaintiff submitted a third

request for accommodations, which appears to be signed by Ms. Lewis.  (Dkt. No. 22-2

at 17-18).  Dr. Guzman denied plaintiff's request, noting "non-significant hearing loss"

and "no medical verification on file."  (*Id.*).

Plaintiff alleges that as a result of the revocation of his reasonable

accommodations, he has, among other things, been unable to read or write in the

6

context of "attempting to litigate within his prison cell and in law library," and has been forced to skip meals for fear of his safety, as well as avoid the "outside yard activities." (AC at 3-4).

## III.   Retaliation

### A.   Legal Standards

To state a First Amendment claim of retaliation, an inmate must allege facts plausibly suggesting that (1) the speech or conduct at issue was protected, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected conduct and the adverse action. *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citations omitted).  The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)).  In other words, we must examine prisoners' claims of retaliation with "skepticism and particular care." *Rivera v. Goord*, 119 F. Supp 2d 327, 339 (S.D.N.Y. 2000) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).  Accordingly, a First Amendment retaliation claim must be supported by "specific and detailed factual allegations," and not stated in "wholly conclusory terms." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d. Cir. 2015) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983),

*overruled on other grounds*, *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 122 (2002)).

In order to satisfy the final prong, "the causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Cruz v. Grosso*, No. 9:13-CV-30 (FJS/TWD), 2014 WL 2176256, at *6 (N.D.N.Y. May 23, 2014) (citing inter alia *Colon*, 58 F.3d at 873).  Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, including temporal proximity between the protected activity and the alleged retaliatory act, and statements by the defendant concerning his or her motivation. *Cruz*, 2014 WL 2176256, at *6 (citing *Colon*, 58 F.3d at 872-73). However, temporal proximity alone is not enough to establish a causal connection.  The Second Circuit has held that where "timing is the only basis for a claim of retaliation . . . an inference of retaliation does not arise." *Thomas v. Waugh*, No. 9:13-CV-0321 (MAD/TWD), 2015 WL 5750945, at *15 (N.D.N.Y. Sept. 30, 2015) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)).

### B.    Analysis

Defendants argue that plaintiff's First Amendment retaliation claim should be dismissed for failure to state a claim, citing to various purported pleading deficiencies by plaintiff.  As previously discussed, the court approaches plaintiff's retaliation claims with some measure of skepticism, as instructed by the Second Circuit.  However, it is

8

also well settled in this district that courts must afford pro se plaintiffs "special

solicitude" before granting motions to dismiss or motions for summary judgment.

*Mercer v. Kinderman*, No. 9:20-CV-665 (MAD/TWD), 2021 WL 2431400, at *2

(N.D.N.Y. June 15, 2021) (citing *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)). "A

document filed pro se is 'to be liberally construed,' . . . and 'a pro se complaint,

however in artfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.' " *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "This policy of liberally construing pro se

submissions is driven by the understanding that implicit in the right of self-

representation is an obligation on the part of the court to make reasonable allowances to

protect pro se litigants from inadvertent forfeiture of important rights because of their

lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir.

2006) (internal quotations and modifications omitted). Therefore, courts read pro se

filings "to raise the strongest arguments that they suggest," *Id.* at 474.

    With the above standards in mind, the court turns to defendants' first argument

that, with respect to the first prong of plaintiff's retaliation claim, plaintiff has failed to

"plead that the defendants were aware of the alleged protected activity that he engaged

in, . . . when exactly he engaged in the protected activity[,] . . . what exactly he

complained of, and to whom, and about whom or what." (Defendants' Memorandum of

9

Law ("Defs.' MOL") at 5) (Dkt. No. 43-1).  To the extent defendants argue that plaintiff's allegations are "wholly conclusory" is these respects, the court disagrees.  As Judge Suddaby alluded in his initial review, plaintiff's allegations pertaining to his protected activity are sufficient to satisfy the notice requirements of Fed. R. Civ. P. 8. Plaintiff has plausibly alleged that his complaints to "outside agencies" constituted protected conduct,[1] and the court is not inclined to dismiss, at this juncture, plaintiff's retaliation claim for lack of detail to the extent demanded by the defendants in their motion papers.  *See Medina v. Black*, No. 3:15-CV-1371, 2016 WL 386030, at *1 (D. Conn. Feb. 1, 2016) (Noting upon review of a pro se incarcerated individual's complaint that "[d]etailed allegations are not required, but the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based.") (citing *Bell Atlantic v. Twombly*, 550 U.S. at  555–56).

Turning to the defendants' more specific arguments, they also contend that dismissal is warranted because the alleged adverse action preceded plaintiff's constitutionally-protected expression.  Admittedly, where a plaintiff alleges that an adverse action occurred before the alleged protected activity, plaintiff cannot establish a

---

[1] *See Stinson v. City of New York*, No. 18-CV-0027, 2021 WL 3438284, at *12 (S.D.N.Y. July 6, 2021) (" '[T]he filing of prison grievances is a constitutionally protected activity,' *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003), and I see no reason why a complaint made to an outside agency (like the Legal Aid Society) and relayed to prison authorities by email should be treated any differently.").

10

causal connection between the two and dismissal is warranted. *See Trisvan v. Annucci*, No. 14-CV-6016, 2021 WL 3741650, at *4 (E.D.N.Y. Aug. 24, 2021), *aff'd*, No. 21-2162, 2022 WL 4665965 (2d Cir. Oct. 3, 2022) ("Because the alleged adverse action occurred before the alleged protected activity, and because no genuine issue of material fact exists with respect to the timing of these events, Plaintiff cannot establish a causal connection between the protected conduct and the alleged adverse action") (citing *McAllister v. Queens Borough Pub. Library*, 309 F. App'x 457, 459 (2d Cir. 2009)); *Elder v. Silva*, No. 16-CV-1925, 2021 WL 1102996, at *10 (E.D. Cal. Mar. 23, 2021) ("[T]he only alleged protected activity — the filing of a grievance against [the defendant] — occurred after [the plaintiff's] property was destroyed. Absent [the plaintiff] engaging in some protected activity prior to an adverse action, . . . [the plaintiff] cannot establish that [the defendant's] conduct was motivated by the protected activity. As such, [the plaintiff] cannot establish an essential element of his retaliation claim . . . .").

In this case, defendants contend that the decision to revoke plaintiff's reasonable accommodations and other services provided by the SDU took place prior to plaintiff's facility interviews with DRNY and LAS.  (Defs.' MOL at 5-6.)  In support of their position, defendants rely on plaintiff's assertion that the interviews took place on January 16, 2020, and point to exhibits attached to the amended complaint suggesting

11

that plaintiff's access reasonable accommodations were revoked six days earlier, on January 10th. (Defs.' MOL at 5-7). Defendants, however, do not consider plaintiff's allegation that his *initial* contact with the various advocacy groups occurred sometime between September 2019 and January 2020. (AC at 4-5). In particular, an exhibit attached to plaintiff's amended complaint suggests that he complained to DRNY sometime before December 19, 2019. (Dkt. No. 49 at 33). This same exhibit, a letter from DRNY to plaintiff notifying him of their upcoming visit, further indicates that his name would be put on a list of inmates who DRNY would like to interview, to be submitted to DOCCS. (*Id.*). Accordingly, dismissal on this basis is not warranted as a genuine issue of material fact exists as to the timing of the events alleged in plaintiff's amended complaint.

Defendants also argue that dismissal is warranted because they would have taken the alleged adverse action even in the absence of any protected conduct. "Even if [a] plaintiff makes the appropriate showing of retaliation, defendants may avoid liability if they demonstrate that they would have taken the same adverse action even in the absence of the protected conduct." *Keyes v. Venettozzi,* No. 9:18-CV-0372 (GTS/DJS), 2022 WL 991402, at *5 (N.D.N.Y. Mar. 31, 2022). Here, defendants maintain that plaintiff was removed from the SDU, and his reasonable accommodations/services were revoked, because he did not meet the criteria for SDU services, notwithstanding his

complaints to the various advocacy groups.  In support of their argument, defendants point to a January 16, 2020 correspondence from defendant Lewis to the plaintiff, which is attached to plaintiff's exhibit as a complaint, stating that "[b]ased upon your most recent optometry consultation, which has been reviewed by . . . [defendant] Dr. Guzman, it has been determined that you do not meet the criteria for SDU services." (Dkt. No. 22-1 at 9).

Defendants do not address, however, the evidence suggesting that plaintiff was verified as "legally blind" by defendant Lewis and other medical staff at Eastern C.F. only four months prior, in September 2019.  (Dkt. No. 49 at 30).  At base, this evidence creates some uncertainty surrounding the issue of whether plaintiff's reasonable accommodations and SDU services would have been revoked in January 2020, regardless of his contact with DRNY and LAS.  Accordingly, the court will not recommend dismissal at this juncture on such a basis.  *See Funches v. Russo*, No. 9:17-CV-1292 (LEK/DJS), 2018 WL 6982087, at *5 (N.D.N.Y. Nov. 2, 2018) (citing *Scott v. Coughlin*, 344 F.3d at 287), *report and recommendation adopted as modified*, 2018 WL 6381058 (N.D.N.Y. Dec. 6, 2018) ("While this type of defense is certainly available in a retaliation claim, it involves burden shifting that often requires full discovery before a final determination can be reached.")

13

Based on the aforementioned, at this early stage of the litigation, even viewing the allegations "with skepticism and particular care," the court finds that plaintiff has managed to state a plausible First Amendment retaliation claim against defendants Morris and Guzman, and recommends denying defendants' motion to dismiss with respect to these claims.

## IV.    Claims Pursuant to the ADA and RA

Defendants further argue that plaintiff's claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act should be dismissed.  At the outset, defendants contend that plaintiff cannot maintain his ADA and RA claims against the defendants in their individual capacities.  The court agrees.  *See Durr v. Slator*, 558 F. Supp. 3d 1, 33 (N.D.N.Y. 2021) ("It is well-settled that neither Title II of the ADA nor [Section] 504 of the Rehabilitation Act provides for individual capacity suits against state officials.") (citing *Hill v. LaClair*, No. 9:20-CV-441, 2020 WL 2404771, *7 (N.D.N.Y. May 11, 2020) (internal quotation marks and citation omitted)); *see also Monroe v. Gerbing*, No. 16-CV-2818, 2017 WL 6614625 at *15 (S.D.N.Y. Dec. 27, 2017) (citing *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)).  Accordingly, to the extent plaintiff maintains these claims against the defendants in their individual capacities, dismissal is warranted.

14

Defendants also argue that plaintiff cannot maintain his ADA and RA claims against them in their official capacities.  As discussed by Judge Suddaby in his order upon initial review, this issue is less settled among the district courts in this Circuit. [2] Assuming for purposes of this motion that plaintiff's ADA and RA claims against the defendants in their official capacities are not precluded by the Eleventh Amendment, it appears that plaintiff would still be required to plead "intentional violations" of the RA and, perhaps, that the ADA violation was motivated by either discriminatory animus or ill will due to disability,[3] in order to avoid dismissal.   Here, plaintiff alleges that the defendants discriminated against him because he "spear headed the visit from [the disability] advocates."  (AC at 8).  To the extent that plaintiff has alleged that he was denied reasonable accommodations and/or services because of, and in retaliation for, his purported self-advocacy with respect to his disability, the court will recommend

---

[2] *See Thompson v. New York State Corr. & Cmty. Supervision*, No. 22-CV-6307, 2022 WL 4562318, at *11-14 (W.D.N.Y. Sept. 29, 2022) (Discussing the availability of injunctive and compensatory damages against individual defendants in their official capacities under the ADA and RA, recognizing the "growing fracture" among district courts in this Circuit in their approach to analyzing official capacity claims for compensatory damages under the ADA, and ultimately allowing Thompson's ADA and RA claims for compensatory damages to proceed on the pleadings, because they are not barred by sovereign immunity as a matter of law and "may" be available).

[3] *See Constantine v. Merola,* No. 1:20-CV-1012 (DNH/ML), 2020 WL 8450544, at *4 n. 7 (N.D.N.Y. Nov. 6, 2020), *report and recommendation adopted sub nom. Constantine v. NYS Deaf Cmty.*, 2021 WL 392487 (N.D.N.Y. Feb. 4, 2021) (recognizing unsettled Circuit law as to whether a plaintiff must plead that a Title II ADA violation was motivated by either "discriminatory animus or ill will stemming from plaintiff's disability," and deferring consideration of the issue at the pleading stage).

denying defendants' request to dismiss plaintiff's ADA and RA claims against the defendants in their official capacities, at this stage of the litigation. *Compare Thompson v. New York Stat Corr. & Cmty. Supervision*, 2022 WL 4562318 at *11-14 (finding that plaintiff satisfied the official capacity pleading requirements for his ADA and RA claims where he alleged that defendant "improperly modified reasonable accommodations he had been medically verified for"); *with Ashcroft v. Lee,* No. 17-CV-0398, 2017 WL 8895116 (N.D.N.Y. Oct. 24, 2017), *report and recommendation adopted* 2018 WL 910569 (N.D.N.Y. Feb. 15, 2018) (dismissing ADA/RA claims where the court found that many of plaintiff's requests for reasonable accommodations were denied for valid, nondiscriminatory reasons, and that the complaint suggested that "the denial of accommodations was the result of retaliatory animus by certain prison officials because plaintiff filed requests for accommodation").[4]

---

[4] *But see Matagrano v. New York State Dep't of Corr. & Cmty. Supervision,* No. 9:19-CV-763 (BKS/DJS), 2020 WL 7338586, at *14 (N.D.N.Y. Dec. 14, 2020) (declining to extend *Ashcroft* and concluding that where plaintiff "pled specific and concrete facts allowing a reasonable inference that, due to the failures of DOCCS and its employees to consistently and properly give him access to reasonable accommodations for his hearing disability, he was unable to fully 'participate in or benefit from' the 'services, programs or activities' offered" by the facility, that was "all he need[ed] to do to make out a prima facie case under the ADA and [RA]," and the "fact that certain actions by particular DOCCS employees may have been motivated in part by factors other than discriminatory animus toward plaintiff's disability – such as a desire to retaliate against plaintiff for filing grievances – [did] not defeat his prima facie case.").

### V.    <u>Negligence</u>

Defendants argue that this court lacks subject matter jurisdiction over plaintiff's

negligence claims against them. As previously mentioned, plaintiff purports to be suing

the defendants in both their individual and official capacities.  However, with respect to

state law claims, "New York law prevents an inmate from suing, in either federal or

state court, a correctional employee in [his or] her individual capacity[.]" *Gordon v.*

*City of New York*, No. 05-0351-PR, 2005 WL 2899863, at *1 (2d Cir. Nov. 3, 2005)

(citing *Baker v. Coughlin*, 77 F.3d 12, 14-15 (2d Cir. 1996)). Instead, plaintiffs can only

bring these claims in New York's Court of Claims. *See* N.Y. Corr. Law § 24.2. Section

24 by extension serves to deprive federal courts of subject matter jurisdiction over all

state law claims against correctional employees. *See Jackson v. Yando*, No. 9:13-CV-

1279 (TWD), 2016 WL 6267967, at *2 (N.D.N.Y. Oct. 26, 2016) (dismissing state law

claims against corrections officials for lack of subject matter jurisdiction).

To the extent plaintiff intended to pursue his state law negligence claims for

damages against the DOCCS-employee defendants in their official capacities, such

claims would be barred by sovereign immunity under the Eleventh Amendment. *See,*

*e.g., Gunn v. Bentivegna*, No. 1:20-CV-2440, 2020 WL 2571015, at *2–3 (S.D.N.Y.

May 19, 2020) (plaintiff's civil rights claims against DOCCS, as well as his claims for

damages against the individual defendants in their official capacities, are barred under

17

the doctrine of Eleventh Amendment immunity); *Chris H. v. New York*, 764 F. App'x 53, 55 (2d Cir. 2019). Accordingly, this court recommends that plaintiff's state-law negligence claims against the named defendants be dismissed.

## VI.   Opportunity to Amend

### A.   Legal Standards

Generally, when the court dismisses a pro se complaint for failure to state a claim, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *See Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 238-39 (E.D.N.Y. Jan. 28, 2015) (considering whether to grant plaintiff leave to amend after finding that plaintiff failed to state a plausible claim under section 1983) (citing *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000)).  In *Cuoco*, the Second Circuit held that leave to amend should be denied where "better pleading will not cure" the defects in a plaintiff's complaint. *Id.*

### B.   Analysis

This court is recommending that defendants' motion to dismiss be granted only with respect to plaintiff's (1) ADA and RA claims asserted against the defendants in their individual capacities, and (2) state law negligence claims.  Because there is no amendment that could cure the deficiencies addressed in this report-recommendation with respect to these claims, the court recommends they be dismissed without leave to

18

amend.  Plaintiff's ADA and RA claims should be dismissed with prejudice as against the individual defendants; however, the state law negligence claims should be dismissed without prejudice to their being filed against an appropriate party in the appropriate state court.

WHEREFORE, based on the above, it is

RECOMMENDED, that defendants' motion to dismiss (Dkt. No. 43) be GRANTED IN PART with respect to (1) plaintiff's ADA and RA claims against the defendants in their individual capacities, which are subject to dismissal with prejudice and without leave to amend, and (2) plaintiff's state law negligence claims, which are subject to dismissal without prejudice, but without leave to amend; and it is further

RECOMMENDED, that defendants' motion to dismiss (Dkt. No. 43) be DENIED in all other respects, and it is further

ORDERED that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary*

19

*of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: August 17, 2023

Andrew T. Baxter
U.S. Magistrate Judge

20